[Cite as *State v. Gordon*, **2011-Ohio-3938**.]

STATE OF OHIO        )            IN THE COURT OF APPEALS
                      )ss:       NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

STATE OF OHIO                      C.A. No.     25531

     Appellee

     v.                             APPEAL FROM JUDGMENT
                                  ENTERED IN THE
GREGORY WILLIAM GORDON       COURT OF COMMON PLEAS
                                  COUNTY OF SUMMIT, OHIO
     Appellant                 CASE No.    CR 10 03 0580

DECISION AND JOURNAL ENTRY

Dated: August 10, 2011

DICKINSON, Judge.

## INTRODUCTION

{¶1} Christopher Phillips saw Gregory Gordon buy beer at a gas station, even though Mr. Gordon appeared to already be intoxicated. When Mr. Gordon got into the driver's seat of a car, Mr. Phillips called the sheriff's office. He followed Mr. Gordon to his house and waited until deputies arrived. The Grand Jury indicted Mr. Gordon for driving under a specified lifetime suspension, driving under suspension, and operating a vehicle while under the influence of alcohol. A jury found him guilty of each count, and the trial court sentenced him to five years in prison. Mr. Gordon has appealed, arguing that the trial court incorrectly denied his motion to suppress, that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence, and that the court improperly sentenced him. We affirm because the trial court did not deny Mr. Gordon's right to a fair trial by allowing Mr. Phillips to

identify him, his convictions are supported by sufficient evidence and are not against the manifest weight of the evidence, and the court properly sentenced him.

FACTS

{¶2} Mr. Phillips testified that he was at a gas station buying milk on December 13, 2009, when he noticed a man who smelled like he had had a lot of alcohol buying a six-pack of beer. After the man left, Mr. Phillips asked the cashier if the man had driven to the gas station, but she did not answer. When he finished his purchase, Mr. Phillips walked outside and saw the man getting into the driver's seat of a car. Mr. Phillips got into his truck, moved it so that it was blocking the other man's car, and called the sheriff's office. The other man got out of his car and yelled at Mr. Phillips, then got back in his car and started backing out. Because he did not want to get hit, Mr. Phillips moved his truck, but decided to follow the other man's car. The man noticed Mr. Phillips following him, and stopped a couple of times to yell at him. Undeterred, Mr. Phillips continued following the car to a house. According to him, as the man was getting out of his car, deputies arrived and confronted the man.

{¶3} Deputy Michael Lowe testified that he was on patrol when he received a dispatch about a possibly intoxicated driver. He determined the address where the car was registered and, because the driver appeared to be heading to that address, drove to it also. When he arrived, he saw someone, whom he later identified as Mr. Gordon, exiting a car. As Deputy Lowe stopped his cruiser, Mr. Gordon began rushing toward the house. The deputy told Mr. Gordon to stop, and he eventually complied. Deputy Lowe testified that Mr. Gordon had a "strong odor of alcoholic beverages" and that he could tell, from his training in the detection of people who are under the influence of alcohol, that Mr. Gordon had been drinking.

**{¶4}** Deputy Thomas Harvey testified that he received the same dispatch as Deputy Lowe and arrived at Mr. Gordon's house "[s]econds" after Deputy Lowe. When he arrived, Mr. Gordon was outside a car, but near it. He saw Deputy Lowe block Mr. Gordon from entering his house and helped secure him. According to Deputy Harvey, Mr. Gordon's speech was slurred, he had a strong odor of alcohol, his face was flushed, his eyes were bloodshot, he was combative, and he expressed a wide range of emotions in a short period of time, which were all indicative of intoxication. Deputy Harvey found a six-pack of beer in the car.

MOTION TO SUPPRESS

**{¶5}** Mr. Gordon's third assignment of error is that "[t]he trial court committed reversible error by denying [his] motion to suppress identification." A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St. 3d 152, 2003-Ohio-5372, at ¶8. Generally, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id*. But see *State v. Metcalf*, 9th Dist. No. 23600, 2007-Ohio-4001, at ¶14 (Dickinson, J., concurring). The reviewing court "must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside*, 2003-Ohio-5372, at ¶8.

**{¶6}** Addressing Mr. Gordon's assignment of error is complicated because his argument has changed over time. Before trial, he moved to suppress "his out-of-court identification that occurred on December 13, 2009, . . . on the grounds that it was an unduly suggestive show-up identification procedure[.]" At a hearing on the motion, it came to light that there was no such procedure and that the deputies had never asked Mr. Phillips to identify Mr. Gordon after the incident. In its ruling on the motion, the trial court focused, instead, on whether

Mr. Phillips, as an informant, provided sufficiently reliable information to give the deputies reasonable suspicion to stop Mr. Gordon outside his house.

{¶7} In his brief to this Court, Mr. Gordon's argument focuses on the fact that Mr. Phillips could not positively identify him at the suppression hearing. According to him, because Mr. Phillips could not identify him at the suppression hearing, the trial court should have granted his motion to suppress.

{¶8} "[If] an officer making an investigative stop relies solely upon a dispatch, the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity." *City of Maumee v. Weisner*, 87 Ohio St. 3d 295, paragraph one of the syllabus (1999). In such a situation, "the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip." *Id*. at 299. "The appropriate analysis . . . is whether the tip itself has sufficient indicia of reliability to justify the investigative stop." *Id*. "Factors considered 'highly relevant in determining the value of [the informant's] report' are the informant's veracity, reliability, and basis of knowledge. *Id*. (quoting *Alabama v. White*, 496 U.S. 325, 328 (1990)).

{¶9} Whether Mr. Phillips could identify Mr. Gordon at the suppression hearing had no bearing on whether his tip the night of the incident had such sufficient indicia of reliability that it justified the deputies stopping Mr. Gordon outside his house. Mr. Gordon's argument, therefore, is without merit.

{¶10} Mr. Gordon has also argued that, since Mr. Phillips could not identify him at the suppression hearing, the trial court denied him the right to a fair trial by allowing Mr. Phillips to identify him at trial. At the suppression hearing, Mr. Phillips testified, in response to a question about whether he had been asked to identify Mr. Gordon the night of the incident, that "I could

not make a positive ID today, no." At trial, he testified, in response to a question of whether he could "identify the defendant by face," that "I didn't get a clear look at the guy's face, other than what appears to be this gentleman here to my right." Mr. Phillips clarified that, "[t]o be fair," he did not know the color of the person's eyes, and only knew that he was a "tall white male with dark hair." On cross-examination, Mr. Gordon impeached Mr. Phillips with his testimony from the suppression hearing, namely, that he had been unable to identify Mr. Gordon as the man he saw at the gas station at that time. On redirect, Mr. Phillips said that, although the person he saw at the suppression hearing "look[ed] like the guy" he saw at the gas station, he "just [could not] say that is – that is the guy."

{¶11} "When a witness has been confronted with a suspect before trial, due process requires a court to suppress [his] identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances." *State v. Waddy*, 63 Ohio St. 3d 424, 438 (1992) (citing *Neil v. Biggers*, 409 U.S. 188 (1972)). "[N]o due process violation will be found where an identification does not stem from an impermissibly suggestive confrontation, but is instead the result of observations at the time of the crime." *State v. Davis*, 76 Ohio St. 3d 107, 112 (1996).

{¶12} Mr. Gordon's argument appears to be that it was unnecessarily suggestive for Mr. Phillips to see him at the suppression hearing. Although each case must be examined on an individual basis, courts have generally rejected arguments that an in-court identification was unnecessarily suggestive. See *State v. Jenkins*, 2d Dist. No. CA 1213, 1981 WL 2849 at *4 (July 8, 1981) (compiling cases). In *United States ex rel. Riffert v. Rundle*, 464 F.2d 1348 (3d Cir. 1972), the Third Circuit recognized "[t]he inherent suggestiveness of any one-to-one identification may very well be increased when a witness is asked to positively identify a

defendant in the context of a judicial proceeding already instituted against him" and recommended that "[t]o minimize this effect, any identification initially made at a judicial proceeding, should be kept, wherever possible, within the formal context of that proceeding." *Id*. at 1350. Distinguishing the case before it from those involving police identification procedures, the court noted that the witnesses "were present at the [pretrial] hearing in order to testify for the Commonwealth and their identifications were made in that context with full opportunity to defense counsel to cross-examine. Counsel was present and participated throughout the hearing and was therefore able to cross-examine the witnesses both at the hearing and the trial as to any weakness in their identifications. Further, there is no indication in the record, nor does counsel suggest, that the police 'aided' the two witnesses in their identification prior to their taking the stand." *Id*. It, therefore, concluded that "[t]here was no violation of due process." *Id*.; see also *Laury v. State*, 260 A. 2d 907, 909 (Del. 1969) ("If accepted, the defendants' contention would require a 'line-up' identification in every case as a prerequisite to every court room identification. . . . Generally speaking, a court room confrontation, in the presence of court and counsel and with the right of cross examination preserved, provides adequate protection to the rights of an accused[.]").

{¶13} The United States Supreme Court has recognized that "the primary evil to be avoided" in eye-witness identification cases "is 'a very substantial likelihood of irreparable misidentification.'" *Neil v. Biggers*, 409 U.S. 188, 198 (1972) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). Upon review of the record, we conclude that it was not unnecessarily suggestive for Mr. Phillips to see Mr. Gordon at the suppression hearing. As in *Rundle* and *Laury*, the identification occurred at a formal hearing during which Mr. Gordon was represented by counsel and had the opportunity for cross-examination. We also note that Mr.

Phillips's answer at the suppression hearing was in response to a question by Mr. Gordon's lawyer on cross-examination. Mr. Gordon had the opportunity to follow-up on Mr. Phillips's unresponsive answer, but did not. We further note that, at trial, Mr. Phillips's identification of Mr. Gordon was equivocal and that Mr. Gordon's lawyer thoroughly cross-examined him on the issue, using his answer from the suppression hearing to impeach him. Accordingly, we conclude that Mr. Phillips's identification testimony did not violate Mr. Gordon's right to a fair trial. Mr. Gordon's third assignment of error is overruled.

## SUFFICIENCY

{¶14} The first part of Mr. Gordon's second assignment of error is that his convictions were not supported by sufficient evidence. Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. *State v. Thompkins*, 78 Ohio St. 3d 380, 386 (1997); *State v. West*, 9th Dist. No. 04CA008554, 2005-Ohio-990, at ¶33. We must determine whether, viewing the evidence in a light most favorable to the prosecution, it could have convinced the average finder of fact of Mr. Gordon's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).

{¶15} The jury found Mr. Gordon guilty of driving under suspension and driving under lifetime suspension. Under Section 4510.11(A) of the Ohio Revised Code, "[n]o person whose driver's . . . license . . . has been suspended . . . shall operate any motor vehicle upon the public roads . . . during the period of suspension[.]" Under Section 4510.18(A), "[n]o person whose driver's . . . license . . . has been suspended for life . . . shall operate any motor vehicle upon the public roads . . . within this state during the remaining life of the person." It also found him guilty of operating a motor vehicle while under the influence of alcohol. Under Section 4511.19(A)(1)(a), "[n]o person shall operate any vehicle . . . within this state, if, at the time of

the operation, . . . [t]he person is under the influence of alcohol[.]"  According to Mr. Gordon, there was insufficient evidence presented at trial to prove that he operated a vehicle or was under the influence of alcohol.

{¶16}  Regarding whether Mr. Gordon operated a vehicle, Mr. Phillips testified that the man he saw at the gas station got into a vehicle by himself and drove away, that he followed the man home, and that he watched deputies make contact with the man.  The deputies testified that Mr. Gordon was the man with whom they made contact based on Mr. Phillips's report.  Accordingly, we conclude that there was sufficient evidence for the jury to find beyond a reasonable doubt that Mr. Gordon operated a motor vehicle.

{¶17}  Regarding whether Mr. Gordon was intoxicated, the deputies testified that, because Mr. Gordon was combative, it was not safe for them to do any field sobriety tests.  Mr. Gordon also refused to take a breath-alcohol content test.  The deputies testified, however, that they each had nine years of experience, that they had been trained in detecting alcohol use, and that, consistent with their training and experience, they determined that Mr. Gordon was intoxicated.  According to Deputy Harvey, Mr. Gordon's speech was slurred, his face was flushed, his eyes were bloodshot, he had a strong odor of alcohol, he was combative, and he expressed a wide range of emotions in a short period of time.

{¶18}  A defendant can be convicted under Section 4511.19(A)(1)(a) even if "no field sobriety tests were requested or completed, and no blood, breath or urine test was requested or completed."  *State v. Bolish*, 12th Dist. No. CA2005-10-441, 2006-Ohio-5375, at ¶40; *State v. Cunningham*, 9th Dist. No. 2475, 1989 WL 109125 at *1 (Sept. 20, 1989).  In *Cunningham*, this Court specifically rejected the argument that an "arresting officer's opinion that [the defendant]

was under the influence of alcohol, with no field sobriety or breath tests to support the opinion, was insufficient evidence to establish that [he] was under the influence of alcohol." *Id*.

{¶19} In *State v. Schmitt*, 101 Ohio St. 3d 79, 2004-Ohio-37, the Ohio Supreme Court recognized that "slurred speech, bloodshot eyes, and odor of alcohol" are all "indicia of intoxication." *Id*. at ¶14. In *Bolish*, a police officer, who had 18 years of experience, testified that Mr. Bolish was intoxicated because he was talking very fast, his speech was slurred, his eyes were "glassy" and bloodshot, he smelled strongly of alcoholic beverages, and he was swaying back and forth. *State v. Bolish*, 12th Dist. No. CA2005-10-441, 2006-Ohio-5375, at ¶47. The Twelfth District concluded that there was "ample evidence" to convict Mr. Bolish under Section 4511.19(A)(1)(a). *Id*.; see also *City of Columbus v. Thevenin*, 10th Dist. No. 05AP-879, 2006-Ohio-4714, at ¶26-31 (reaching same conclusion under similar facts).

{¶20} In light of the deputies' combined experience, their alcohol detection training, and their observations of Mr. Gordon's appearance and conduct, we conclude that there was sufficient evidence in the record from which the jury could find that Mr. Gordon was intoxicated at the time he drove home from the gas station. To the extent that Mr. Gordon's second assignment of error is that his convictions are not supported by sufficient evidence, it is overruled

### MANIFEST WEIGHT

{¶21} The second part of Mr. Gordon's second assignment of error is that his convictions are against the manifest weight of the evidence. When a defendant argues that his convictions are against the manifest weight of the evidence, we "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and

created such a manifest miscarriage of justice that the conviction[s] must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App. 3d 339, 340 (1986).

**{¶22}** Mr. Gordon's manifest weight argument focuses on whether the evidence that he drove a car was credible. He has noted that neither deputy saw him operate a car and that the car's engine was not running when they arrived. While not mentioned by Mr. Gordon in his brief, we note that there was also testimony that Mr. Gordon did not have any keys in his possession at the time the deputies arrested him.

**{¶23}** The State submitted the recording of Mr. Phillips's call to the dispatcher, which runs until Mr. Phillips indicates that the deputies "got" the person he had been following. The deputies also found a six-pack of beer in the car, which was consistent with what Mr. Phillips said Mr. Gordon bought at the gas station. In addition, while it was Mr. Gordon's wife who had the keys to the car, the deputies testified that it took them about ten minutes to secure Mr. Gordon. During that time, they were unable to keep track of Mrs. Gordon, who had come out of the house during the encounter. It was undisputed, however, that she was wearing a nightgown and did not have shoes on. The jury could have reasonably inferred that Mr. Gordon dropped his keys while the deputies were approaching him and that Mrs. Gordon picked them up while they were handcuffing him. Upon review of the entire record, we conclude that the jury did not lose its way when it found that Mr. Gordon operated a motor vehicle. To the extent that his second assignment of error is that his convictions are against the manifest weight of the evidence, it is overruled.

## SENTENCING

**{¶24}** Mr. Gordon's first assignment of error is that the trial court exercised improper discretion when it gave him the maximum sentence for driving under a lifetime suspension. In

*State v. Kalish*, 120 Ohio St. 3d 23, 2008-Ohio-4912, a plurality of the Ohio Supreme Court determined that, in light of *State v. Foster*, 109 Ohio St. 3d 1, 2006-Ohio-856, when appellate courts review criminal sentences, they must apply a "two-step approach." *Id*. at ¶4. The first step is whether the sentence was contrary to law. *Id*. The second step is whether the court exercised proper discretion in imposing the term of imprisonment. *Id*. at ¶26. The parties agree that *Kalish* provides the correct standard of review in this case.

**{¶25}** Mr. Gordon has argued that his sentence is contrary to law because the trial court failed to consider the principles and purposes of sentencing under Sections 2929.11 and 2929.12 of the Ohio Revised Code. Under Section 2929.11(A) of the Ohio Revised Code, "[a] court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." R.C. 2929.11(A). "A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in [Section 2929.11(A)], commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

**{¶26}** Section 2929.12 of the Ohio Revised Code provides additional guidance. "Unless otherwise required by section 2929.13 or 2929.14 of the Revised Code, a court that imposes a sentence . . . upon an offender for a felony has discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in section 2929.11 of the Revised

Code. In exercising that discretion, the court shall consider the factors set forth in [Sections 2929.12(B) and (C)] relating to the seriousness of the conduct and the factors provided in [Sections 2929.12(D) and (E)] relating to the likelihood of the offender's recidivism and, in addition, may consider any other factors that are relevant to achieving those purposes and principles of sentencing." R.C. 2929.12(A).

{¶27} "[If] the trial court does not put on the record its consideration of R.C. 2929.11 and 2929.12, it is presumed that the trial court gave proper consideration to those statutes." *State v. Kalish*, 120 Ohio St. 3d 23, 2008-Ohio-4912, at ¶18 n.4 (citing *State v. Adams*, 37 Ohio St. 3d 295, paragraph three of the syllabus (1988)); *State v. Steidel*, 9th Dist. No. 10CA0025-M, 2011-Ohio-2320, at ¶13. Furthermore, it is evident from the record in this case that the trial court did consider those factors. At the sentencing hearing, the trial court noted that, not only did Mr. Gordon have a previous conviction for driving under the influence, but that the "worst thing" had happened, which was that Mr. Gordon had killed someone. It noted that, even though Mr. Gordon killed someone while driving drunk and spent ten years in prison for it, when he got out he continued to drink and drive. It also noted that Mr. Gordon had violated the conditions of his bond by drinking while awaiting trial. It determined, therefore, that Mr. Gordon had "nothing but a total disregard for everything about the law" and "other human beings." The court's statements show that it considered its need to protect the public and to punish Mr. Gordon, the seriousness of his offense, and his likelihood of recidivism before imposing sentence. Accordingly, Mr. Gordon has failed to establish that his sentence is contrary to law. *Kalish*, 2008-Ohio-4912, at ¶4.

{¶28} Mr. Gordon has also argued that the trial court exercised improper discretion when it sentenced him. He has noted that there was no positive breath-alcohol content test

proving that he was intoxicated, that he did not cause any injury to person or property, and that none of the deputies saw him inside a car. Mr. Gordon's arguments, however, go to the weight of the evidence and not the factors on which the court must base its sentencing decision. See R.C. 2929.11, 2929.12. His first assignment of error is overruled.

## CONCLUSION

**{¶29}** The trial court did not deprive Mr. Gordon of his right to a fair trial when it allowed Mr. Phillips to identify him at trial. Mr. Gordon's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. The trial court exercised proper discretion when it sentenced Mr. Gordon and his sentence is not contrary to law. The judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CLAIR E. DICKINSON
FOR THE COURT

CARR, P. J.
MOORE, J.
CONCUR

APPEARANCES:

KERRY O'BRIEN, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.